UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAURICE TERRELL,

        Plaintiff,

          v.

COOK COUNTY; THOMAS DART, Cook
County Sheriff, in his official capacity;
AND CLEVELAND BANKS, Correctional
Officer, Star No. 15527,

        Defendants.

No. 25 CV 6641

Judge Georgia N. Alexakis

MEMORANDUM OPINION AND ORDER

Plaintiff Maurice Terrell says he was being held as a pre-trial detainee in Cook County Jail when he was physically and sexually assaulted by five fellow detainees. They forced him to call his wife to tell her to send them $1,000 via Cash App and then continued to abuse him for two and a half hours. Meanwhile, Terrell's wife called the jail to report her concerns. But when correctional officer Cleveland Banks was asked to check on Terrell, he did nothing. Terrell now sues Banks, Sheriff Thomas Dart, and Cook County under 42 U.S.C. § 1983. Defendants move to dismiss his complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the Court grants in part and denies in part defendants' motion.

## I.    Legal Standards

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P.

12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must allege facts sufficient to state a facially plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the complaint's "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At this stage (and as it does in the Background section that follows), the Court assumes that the facts alleged in the complaint are true and draws all reasonable inferences from those facts in the plaintiff's favor. *See Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (2007)). Similarly, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Id.* Nevertheless, "[i]t is the defendant's burden to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

## II.  Background

In July 2023, when Terrell was a pre-trial detainee at the Cook County Jail in Chicago, Illinois, he was transferred to a new facility within the jail. [1] ¶¶ 4, 8. Shortly after his arrival, he entered the washroom. *Id.* ¶ 11. Five other detainees soon followed. *Id.* ¶ 13. They attacked him, grabbing his limbs, putting him in a headlock, and punching him in the face. *Id.* ¶¶ 14, 17. They then bound him with zip ties and sexually assaulted him with a plastic spoon. *Id.* ¶¶ 19, 21.

One assailant told Terrell that they would release him if he called someone and got them to send $1,000 using Cash App. *Id.* ¶ 22. Someone gave him a tablet to make the call, and Terrell reached his wife and told her to immediately send money. *Id.* ¶¶ 23, 25. Although he did not explain that he was being coerced—he was being watched closely—his wife could tell he was in distress. *Id.* ¶¶ 24, 27.

After sending the money as instructed, Terrell's wife called the jail and "reported her concerns" to an Officer Clarke at the facility's security desk. *Id.* ¶¶ 26–28. Clarke "notified [] Banks of the call and asked him to check on [Terrell]." *Id.* ¶ 29. Banks conducted a visual check of Terrell's tier and told Clarke that no detainees on the tier had approached him or mentioned any problems. *Id.* ¶¶ 29, 42–43. He also falsely told Clarke that he had checked the bathroom and washroom. *Id.* ¶ 30. Relying on Banks's statement, Clarke told Terrell's wife that nothing was wrong. *Id.* ¶¶ 30–31. When Terrell's mother also called, Clarke told her the same thing. *Id.* ¶ 32.

Terrell's wife called Clarke a second time and requested a wellbeing check. *Id.* ¶ 33. Clarke left her desk and went to Terrell's tier, where she told Banks to check on Terrell. *Id.* ¶ 34. Banks finally checked the washroom. *Id.* ¶ 35. He found the assailants trying to wipe up blood and flush evidence down the toilet. *Id.* ¶ 36. By that time, Terrell had been held hostage and tormented in the washroom for approximately two and a half hours. *Id.* ¶ 37.

Following this ordeal, Terrell spent six days in the hospital being treated for lacerations and bruising to his face and neck, facial swelling, tenderness in his abdomen and neck, puncture wounds, loss of consciousness, and dizziness. *Id.* ¶ 38.

3

He then spent time recovering in the jail's Rehabilitation and Treatment Unit and was confined to a wheelchair before being able to use a walker, then a cane. *Id.* ¶ 39.

The Office of Professional Review eventually recommended that Banks be suspended for 120 days for failure to perform duties, failure to follow policy, failure to properly supervise detainees, and unsatisfactory work performance. *Id.* ¶ 44. Throughout his shift, Banks had failed to conduct regular security checks of living areas and inmates, which jail policy requires at least every 30 minutes. *Id.* ¶¶ 45–47.

Terrell now brings this action under § 1983. [1] ¶ 1. His complaint includes (1) a failure-to-protect claim against Banks, (2) a *Monell* claim against Dart, and (3) a request that the Court order Cook County and Dart to indemnify Banks for any judgment against him. *Id.* at 6–7, 9. Defendants have moved to dismiss Terrell's complaint under Rule 12(b)(6) for failing to state a claim upon which relief can be granted. [9]. They challenge Terrell's failure-to-protect and *Monell* claims but not his indemnification claim, although that claim depends on the first. In response, Terrell withdrew his *Monell* claim but seeks to preserve his failure-to-protect claim. [15] at 2.

## III.  Analysis

Defendants argue that Terrell's failure-to-protect claim should be dismissed because it fails on the merits and because Banks is entitled to qualified immunity. The Court addresses each argument in turn.

### A.  Merits of the Failure-to-Protect Claim

Title I of the Civil Rights Act of 1871 provides redress for violations of constitutional rights. 42 U.S.C. § 1983. The Due Process Clause of the Fourteenth

4

Amendment gives pre-trial detainees the "right to be free from physical harm inflicted by others in the institution." *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). To state a viable failure-to-protect claim, a pre-trial detainee must allege: (1) the defendant made an intentional decision regarding the conditions of plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries. *Id.* (citing *Kemp v. Fulton Cnty.*, 27 F.4th 491, 494 (7th Cir. 2022)).

Defendants focus their challenge on the third element. *See* [9] at 4–6. To satisfy that element, Terrell must plausibly allege that "a specific defendant was 'on notice of a serious risk of harm' to the detainee." *Thomas*, 39 F.4th at 841 (quoting *Kemp*, 27 F.4th at 497). A defendant was "on notice" if "a reasonable officer in [his] circumstances would have appreciated the high degree of risk the detainee was facing," *id.*, based on "what the officer knew at the time," *id.* at 842 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). The analysis "begins with the defendant's knowledge of the factual context and then asks whether a reasonable officer with that knowledge would appreciate the risk of harm and still engage in the same conduct." *Davis v. Rook*, 107 F.4th 777, 781 (7th Cir. 2024).

Defendants say Terrell hasn't plausibly alleged that Banks was on notice that Terrell was in danger. [9] at 5. Terrell alleges that Terrell's wife "reported her concerns" to Clarke, and Clarke "notified … Banks of the call [from Terrell's wife] and asked him to check on [Terrell]." [1] ¶¶ 27, 29. But those allegations, according to defendants, are "insufficient[ly] detail[ed] regarding what was relayed to Officer Banks." [9] at 5.

The Court disagrees. Certainty of harm is not required. An allegation that a similarly situated and reasonable officer would have appreciated the "high degree of risk" is sufficient. *Thomas*, 39 F.4th at 841. For example, in *Starks v. Dart*, No. 24 C 9509, 2025 WL 2838956 (N.D. Ill. Oct. 7, 2025), the plaintiff filed a grievance about his cellmate's drug use, after which the cellmate began threatening the plaintiff. *Id.* at *1. When the plaintiff told several corrections officers about the threats, the officers separated the plaintiff and his now-ex cellmate. *Id.* The threats continued, so plaintiff asked for further separation, including being placed on different decks of the jail. *Id.* The officers nevertheless kept them on the same deck. *Id.* The court held the officer-defendants were on notice of a substantial risk of harm because the plaintiff had informed them of his ex-cellmate's threats. *Id.* at *4.

On the other end of the spectrum is *Kemp*, 27 F.4th 491. There, the plaintiff had an argument with another detainee who lived on his cell block, leading a second detainee to threaten to "get" the plaintiff. *Id.* at 493. The plaintiff did not tell any of the guards about the argument or the threat and instead confronted the two detainees, who responded by beating him. *Id.* When a third detainee joined in the

beating, the plaintiff yelled for help, but no one responded. *Id.* The plaintiff sued an officer who had been patrolling the cell block; the officer had some hearing loss and was not using his hearing aid at the time of the beating. *Id.* The court affirmed the district court's grant of summary judgment in favor of the officer defendant, *id.* at 499, holding that there was no evidence that the officer was on notice of a serious risk of harm to the plaintiff: No one had reported the argument or threats, and the plaintiff had lived peaceably with the other detainees for several months. *Id.* at 497. Plus, the officer had worked without his hearing aid for six months, and there was no evidence of deficient performance during that time. *Id.*

This case is more like *Starks* than *Kemp*. Terrell's wife was asked to send $1,000 to a mysterious address and could tell that Terrell was in distress. [1] ¶¶ 25, 27. The Court reasonably infers that Terrell's wife conveyed those facts when she "reported her concerns" to Clarke. *Id.* ¶ 27. It likewise reasonably infers that Clarke conveyed that information to Banks when she notified him "of the call and asked him to check on [Terrell]." *Id.* ¶ 29. Because Terrell's circumstances were especially troubling, and because Clarke responded to the call from Terrell's wife by asking Banks to take a specific security measure, it stands to reason that Terrell's wife did not simply convey a vague sense of unease to Clarke and that Clarke did not do the same when she spoke to Banks.

Thus, drawing all reasonable inferences in Terrell's favor, as it must at this stage, *Tobey*, 890 F.3d at 645, the Court concludes that Banks was aware of multiple red flags indicating that Terrell was at a significant risk of harm. The facts here are

unlike those in *Kemp*, where there were no earlier reports of imminent harm and the officer literally did not hear the actual call for help. And although the signs here may be less explicit than the threat in *Starks*, they are at least as alarming and suggest an even more immediate risk of harm. A "reasonable officer with that knowledge would appreciate the risk of harm" facing Terrell, *Davis*, 107 F.4th at 781, and would have performed a wellness check as requested by Clarke and required by jail policy, [1] ¶¶ 29, 46–47. But Bates did not. *Id.* ¶¶ 30, 45. Terrell has therefore adequately pleaded the third element. *See Davis*, 107 F.4th at 781.

Terrell has also adequately pleaded the other elements. As to the first, he alleges that Bates chose not to check the washroom and bathroom when Clarke first asked him to perform a wellness check, *id.* ¶¶ 29–30, 42–43, and he revealed his intentionality by lying about the choice, *id.* ¶ 30. *See Starks*, 2025 WL 2838956, at *3 (citing *Clark v. Cook Cnty. Sheriff's Off.*, No. 19 C 7131, 2023 WL 4134808, at *3 (N.D. Ill. June 20, 2023)) (holding that defendant officer's failure to separate plaintiff from a threatening fellow inmate constituted an intentional decision). As to the second and fourth elements, Terrell adequately alleges that Bates's inaction put him at a substantial risk of serious harm and caused his injuries. *See id.* (quoting *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005)) ("[A] beating suffered at the hands of a fellow detainee … clearly constitutes serious harm.").

Terrell's failure-to-protect claim against Bates may therefore proceed.

8

### B.    Qualified Immunity

Defendants also argue that Banks is entitled to qualified immunity because Terrell does not adequately allege a constitutional violation or a clearly established constitutional right. The Court disagrees on both points.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Starks*, 2025 WL 2838956, at *5 (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017)). Defendants typically present qualified immunity as a defense at the summary judgment stage, but they can also present it in a motion to dismiss. *Id.* (citing *Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997)). At this stage, to overcome an assertion of qualified immunity, Terrell must allege a violation of a statutory or constitutional right that was clearly established at the time of the violation so that a reasonable officer would have known of the unlawfulness of his conduct. *Id.* (citing *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020)).

As discussed above, Terrell has plausibly alleged that Banks failed to protect him from his fellow detainees' assault. As for the second prong, the Seventh Circuit had clearly established a duty to protect pretrial detainees from serious harm by others in custody well before the alleged assault occurred in July 2023. *See, e.g.*, *Fisher v. Lovejoy*, 414 F.3d 659, 661 (7th Cir. 2005) ("The Due Process Clause of the Fourteenth Amendment ... places a duty upon jail officials to protect pre-trial detainees from violence."); *Brown*, 398 F.3d at 910–11 (7th Cir. 2005) (noting that pretrial detainee's failure to protect claim arises under the Fourteenth Amendment's Due Process Clause); *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000) (same).

9

Accordingly, Banks is not entitled to qualified immunity at this stage. *See also Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (noting that courts hesitate to dismiss complaints on qualified immunity grounds "[b]ecause an immunity defense usually depends on the facts of the case" beyond the allegations of the complaint).

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss [9] is granted in part and denied in part. Count II, having been withdrawn by Terrell, is dismissed without prejudice. Counts I and III may proceed.

ENTER:

_____
Georgia N. Alexakis
United States District Judge

Date: 1/20/2026